**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| XYZ Corporation, | |
| Plaintiff, | **Case No. 1:24-cv-12483** |
| v. | |
| THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED IN SCHEDULE "A" HERETO, | |
| Defendants. | |

### PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER, INCLUDING A TEMPORARY INJUNCTION, A TEMPORARY ASSET RESTRAINT, EXPEDITED DISCOVERY, AND SERVICE OF PROCESS BY E-MAIL AND/OR ELECTRONIC PUBLICATION

Plaintiff XYZ Corporation ("Plaintiff") seeks entry of a temporary restraining order (the "Motion") against the named Schedule "A" Defendants listed in Exhibit 2 to the Complaint ("Defendants"), that enjoins the manufacture, importation, distribution, offering for sale, and sale of counterfeit brand products through the unauthorized use and display of the company's federally registered trademark. [Dkt. 1 at 10-15.] Plaintiff's Motion further seeks entry of a temporary asset restraint, expedited discovery, and authorization to serve the Defendants by email and/or electronic publication.

Plaintiff's Motion is made a based on the pleadings on file in this action, this Motion, the Declaration of Shawn A. Mangano (the "Mangano Decl.), the Declaration of Jillian Sullivan (the "Sullivan Decl."), and the ███████████████████████ together with any arguments of counsel entertained by the Court.

i

## TABLE OF CONTENTS

I. INTRODUCTION ..........................................................................................................1

II. APPLICABLE LEGAL STANDARDS ......................................................................3

    A. Personal jurisdiction standards. ........................................................................3

    B. Injunctive relief standards..................................................................................4

III. ARGUMENT .................................................................................................................6

    A. The Court can Properly Exercise Personal Jurisdiction Over the Defendants.......6

    B. Plaintiff is Entitled to Temporary Injunctive Relief. ...........................................6

        1. Plaintiff enjoys a high likelihood of success on the merits of its claims. ..........8

        2. Plaintiff has no adequate remedy at law and would suffer irreparable harm absent issuance of injunctive relief.......................................................................10

        3. The balance of the hardships favors issuance of injunctive relief...................11

        4. Issuance of injunctive relief is in the public interest.......................................12

    C. A Minimal Bond Should be Required for Issuance of the TRO.........................13

    D. Plaintiff is Entitled to Expedited Discovery. ......................................................13

    E. Service by Email and/or Electronic Publication is Warranted............................14

IV. IV. CONCLUSION ......................................................................................................18

MOTION FOR TEMPORARY RESTRAINING ORDER          CASE NO. 1:24-cv-12483

## TABLE OF AUTHORITIES

Cases

*Abbott Labs. v. Mead Johnson & Co.,*
971 F.2d 6 (7th Cir. 1992)..................................................................................5

*Barbecue Marx, Inc. v. 551 Ogden, Inc.*
235 F.3d 1041 (7th Cir. 2000).............................................................................8

*Chrome Hearts LLC v. Partnerships & Unincorporated Associations Identified on Schedule "A",*
No. 1:15-CV-03491, 2015 WL 5307609 (N.D. Ill. Sept. 9, 2015).......................4, 7

*Creative Impact Inc. et al v. The 475 Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations Identified on Schedule A Hereto,*
No.:1:19-cv-05907 (N.D. Ill. Sept. 10, 2019) ...................................................7

*Creative Impact Inc. et al v. The Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations Identified on Schedule A Hereto,*
No. 1:18-cv-07531 (N.D. Ill. Nov. 20, 2018) ...................................................4

*Eli Lilly & Co. v. Natural Answers, Inc.,*
233 F.3d 456 (7th Cir. 2000) ..............................................................................5

*Fairly Odd Treasures, LLC v. Partnerships & Unincorporated Associations Identified on Schedule "A",*
2020 WL 8093511 (N.D. Ill. Oct. 28, 2020)......................................................16

*GEFT Outdoors, LLC v. City of Westfield,*
922 F.3d 357 (7th Cir. 2019) ..............................................................................5

*Hangzhou Chic Intelligent Technology Co. v. The Partnerships and Unincorporated Associations Identified on Schedule A, Defendants.,*
2021 WL 1222783 (N.D. Ill. Apr. 1, 2021) .......................................................17

*Hay v. Indiana State Bd. of Tax Comm'rs,*

312 F.3d 876 (7th Cir. 2002) .................................................................................... 14

*Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*,
174 F.3d 411 (4th Cir. 1999) ................................................................................... 13

*In re LDK Solar Secs. Litig.*,
2008 WL 2415186 (N.D. Cal. Jun. 12, 2008) ........................................................... 17

*In re Vuitton et Fils*, S.A.,
606 F.2d 1 (2d Cir. 1979) ......................................................................................... 7

*MacLean-Fogg Co. v. Ningbo Fastlink Equip. Co., Ltd.*,
No. 1:08-cv- 02593 WL 5100414, *2 (N.D. Ill. Dec. 1, 2008) ................................. 16

*Monster Energy Company v. Wensheng*,
136 F.Supp.3d 897 (N.D. Ill. 2015) ...................................................................... 3, 6

*Nanya Tech. Corp. v. Fujitsu Ltd.*,
No. 1:06-cv-00025, 2007 WL 269087 (D. Guam Jan. 26, 2007) ............................. 17

*Oppenheimer Fund, Inc. v. Sanders*,
437 U.S. 340, 98 S. Ct. 2380 (1978) ........................................................................ 14

*Purdue Research Found. v. Sanofi-Sythelabo, S.A.*,
338 F.3d 773 (7th Cir. 2003) ..................................................................................... 3

*Rathmann Grp. v. Tanenbaum*,
889 F.2d 787 (8th Cir. 1989) ................................................................................... 13

*Rio Props., Inc. v. Rio Int'l Interlink*,
284 F.3d 1007 (9th Cir. 2002) ................................................................................. 15

*Rodriguez v. Plymouth Ambulance Serv.*,
577 F.3d 816 (7th Cir. 2009) ................................................................................... 14

*Strabala v. Zhang*,

MOTION FOR TEMPORARY RESTRAINING ORDER        CASE NO. 1:24-cv-12483

318 F.R.D. 81 (N.D. Ill. 2016)...................................................................................16

*Square One Entertainment*,
2021 WL 1253450 ......................................................................................................3

*Ty, Inc. v. The Jones Group, Inc.*,
237 F.3d 891 (7th Cir. 2001) .....................................................................................5

*uBID, Inc. v. GoDaddy Group, Inc.*
623 F.3d 421 (7th Cir. 2010)......................................................................................3

*USA-Halal Chamber of Com., Inc. v. Best Choice Meats, Inc.*,
402 F. Supp. 3d 427 (N.D. Ill. 2019)..........................................................................4

*Vance v. Rumsfeld*,
No. 1:06-cv-06964, 2007 WL 4557812 (N.D. Ill. Dec. 21, 2007)...............................14

*ZURU (Singapore) Pte., Ltd et al v. The Individuals, Corporations, Limited Liability
Companies, Partnerships and Unincorporated Associations Identified on Schedule A Hereto*,
No.: 1-21-CV- 02180, (N.D. Ill. April 27, 2021).............................................3, 7, 13

      Rules

Fed. R. Civ. P. 26 ....................................................................................................14

Fed. R. Civ. P. 4 .....................................................................................................15

MOTION FOR TEMPORARY RESTRAINING ORDER        CASE NO. 1:24-cv-12483

## I.     __INTRODUCTION__

Plaintiff brings this action against the Defendants ("Defendants") for federal trademark infringement (Count I), federal unfair competition (Count II), false designation of origin (Count III), and violation of the Illinois Uniform Deceptive Trade Practices Act (the "Deceptive Trade Practices Act") (Count IV). [Dkt. No. 1 at 10-15.]  Plaintiff founded its brand (the "Brand") in 2017, which is dedicated to women's fashion apparel and serves consumers in the United States and throughout the world. ███████████████  Since founding the Brand, Plaintiff has expended significant time, financial and corporate resources to promote, market, develop, and establish the Brand as a high quality and reputable source for women's fashion apparel, accessories, and related merchandise. (*Id.*)

As alleged in the Complaint, Defendants are unlawfully using Plaintiff's federally registered trademark (the "Brand Trademark") to promote, advertise, market, distribute, offer for sale, and sell knockoff products, including women's clothing, merchandise, and related items, (the "Counterfeit Products") through their marketplace accounts (the "Online Marketplaces") maintained on the Amazon online sales platform (the "Platform"). [Dkt. No. 1 at 2; Mangano Decl. ¶ 4.] In short, Defendants operate a highly sophisticated network whereby they offer Counterfeit Products, of lesser quality and at a discounted price, by associating these inferior products with Plaintiff's Brand through the unauthorized use of the Brand Trademark. (Mangano Decl. ¶ 4.)

Specifically, Defendants created accounts on Amazon to sell their Counterfeit Products through the unauthorized use, employment, digital incorporation, or other online display of the Brand Trademark. (*Id.*) These tactics include incorporating, without authorization, Plaintiff's Brand Trademark in Search Engine Optimization ("SEO") terms, the descriptions of Counterfeit Products, meta tags, hyperlinks, and other digital assets to direct consumers to their Online

| MOTION FOR TEMPORARY RESTRAINING ORDER | CASE NO. 1:24-cv-12483 |

Marketplaces under the auspices that they are selling authentic Brand products when they are not doing so. (Mangano Decl. ¶ 5.)

To implement its scheme, Defendants are alleged to secure its Counterfeit Products from a manufacturing source based in the People's Republic of China ("China"). (*Id.*) Defendants are alleged to use a manufacturing source as Defendants would know that they do not have authorization to sell or market under Plaintiff's trademark had Defendants been acting alone. Leading Plaintiff to believe Defendants are acting in concert with or being encouraged. (*Id.*) The Counterfeit Products being sold by Defendants are simply incapable of being produced independently without the support of a supply chain and manufacturing source capable of supplying considerable, misled, consumer demand. (*Id.*) Plaintiff has filed this action to stop Defendants' unauthorized use of the Brand Trademark to promote and sell their Counterfeit Products and continue their scheme of misleading consumers, including the citizens of the State of Illinois. (*Id.*)

As argued below, Plaintiff asserts that the Court may properly exercise personal jurisdiction over the Defendant in this action because it has fulfilled and shipped orders for the Counterfeit Products to the City of Chicago, thereby making them subject to specific personal jurisdiction. (Sullivan Decl. ¶3 ¶4.) Plaintiff additionally meets all other requirements for issuance of the requested temporary restraining order.

Plaintiff also respectfully requests that it be permitted to conduct expedited discovery on the Amazon Platform and the Defendants – which includes obtaining their email addresses, and for authorization to effectuate electronic service of process on the Defendants based on the email addresses provided by the online Platform. As Defendant sells through a United States based Platform, the reveal of and confirmation of contact information, addresses, email addresses and

sales data would ensure Plaintiff and Defendants could engage in meaningful negotiations or litigation because of filing this lawsuit. Accordingly, and based on the arguments set forth herein, the Court should grant Plaintiff's Motion, which should include the ability to conduct expedited discovery and effectuate electronic service of process through the email addresses maintained by the designated online Amazon Platform.

## II.     APPLICABLE LEGAL STANDARDS

Plaintiff believes that adjudication of its Motion will likely require the Court to consider the following legal issues: (1) whether personal jurisdiction can properly be exercised over the Defendant and (2) whether Plaintiff has satisfied the requirements for issuance of a temporary restraining order. Based on the below applicable legal standards, in addition to the other arguments advanced herein, Plaintiff asserts that its Motion justifies issuance of the requested temporary injunctive relief.

### A.     Personal jurisdiction standards.

Without the benefit of an evidentiary hearing, Plaintiff bears only the burden of making a *prima facie* case for personal jurisdiction, the company's asserted facts should be accepted as true, and any factual determinations should be resolved in its favor. *See uBID, Inc. v. GoDaddy Group, Inc.* 623 F.3d 421, 423 (7th Cir. 2010); *see also Purdue Research Found. v. Sanofi-Sythelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) ("When determining whether a Plaintiff has met his burden, jurisdictional allegations pleaded in the complaint are accepted as true unless proved otherwise by defendants' affidavits or exhibits.").

More specifically, the Northern District of Illinois regularly exercises personal jurisdiction over websites using registered trademarks and/or copyrights without authorization in connection with the offering for sale and selling of knockoff and counterfeit merchandise to Illinois residents over the internet. *See, e.g., Monster Energy Company v. Wensheng*, 136

F.Supp.3d 897, 902-909 (N.D. Ill. 2015); *Square One Entertainment*, 2021 WL 1253450, at *1; *ZURU (Singapore) Pte., Ltd et al v The Individuals, Corporations, Limited Liability Companies, Partnerships and Unincorporated Associations Identified on Schedule A Hereto,* No.: 1-21-CV- 02180, Document # 14, (N.D. Ill. April 27, 2021) (granting orders requested herein in a similar case involving plaintiff's BUNCH O BALLOONS copyright protected works and trademarks); *Creative Impact Inc. et al v. The 475 Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations Identified on Schedule A Hereto*, No.:1:19-cv- 05907, Document # 17 (N.D. Ill. Sept. 10, 2019) (granting orders requested herein in similar case involving plaintiff's BUNCH O BALLOONS trademark); *Creative Impact Inc. et al v. The Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations Identified on Schedule A Hereto*, No. 1:18-cv-07531, Document #: 16 (N.D. Ill. Nov. 20, 2018) (Durkin, J.) (same).

Application of the above standards demonstrates the Court can properly exercise specific personal jurisdiction over Defendants because they have specifically targeted the sale of the Counterfeit Products to citizens of the State of Illinois. (Mangano Decl. ¶ 11.) Moreover, Plaintiff has secured evidence that Defendants have, in fact, sold Counterfeit Products in the State of Illinois and shipped them to the City of Chicago. (*Id.*; Sullivan Decl. ¶¶ 3-4, Ex. 1.) Given that the Defendants have physically shipped Counterfeit Products that have intentionally and willfully used, without authorization, Plaintiff's Brand Trademark to consummate such sales, the Court can unquestionably exercise specific personal jurisdiction over them. Accordingly, personal jurisdiction is not an issue in this action.

### B.  Injunctive relief standards.

District courts within this judicial district hold that the standards applicable to granting a temporary restraining order and to granting a preliminary injunction are identical. *See, e.g.*,

*USA-Halal Chamber of Com., Inc. v. Best Choice Meats, Inc.*, 402 F. Supp. 3d 427, 433 n.5 (N.D. Ill. 2019) (citing cases). A party seeking to obtain a preliminary injunction must demonstrate: (1) that its case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) that it will suffer irreparable harm if the injunction is not granted. *See GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 364 (7th Cir. 2019).

If the Court is satisfied that these three conditions have been met, then it must consider the harm that the nonmoving party will suffer if injunctive relief is granted by balancing such harm against the irreparable harm the moving party will suffer if relief is denied. *See Id.* Finally, the Court must consider the potential effect on the public interest (non-parties) in denying or granting the injunction. *See Id.* The Court then weighs these factors, "sitting as would a chancellor in equity," when it decides whether to grant the injunction. *See Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001) (quoting *Abbott Labs. v. Mead Johnson & Co.,* 971 F.2d 6, 11 (7th Cir. 1992). This process involves engaging in what has been deemed "the sliding scale approach"— the more likely the plaintiff will succeed on the merits, the less the balance of harms need favor the plaintiff's position. *Id.* The sliding scale approach is not mathematical in nature, rather "it is more properly characterized as subjective and intuitive, one which permits district courts to weigh the competing considerations and mold appropriate relief." *Id.* at 895-96. The greater the movant's likelihood of succeeding on the merits, the less the balancing of harms need be in his favor. *See Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 461 (7th Cir. 2000). Proper application of the foregoing standards to Plaintiff's Motion justifies entry of injunctive relief.

III.     **ARGUMENT**

    A.     **The Court can Properly Exercise Personal Jurisdiction Over the Defendants.**

As set forth above, the Court can properly exercise specific personal jurisdiction over the Defendants when they have specifically targeted their infringing activities to the State of Illinois and, more specifically, to this judicial district. *See, e.g., Monster Energy Company*, 136 F.Supp.3d at 902-09. Here, Defendants have clearly engaged in such specific activities causing harm to Plaintiff, thereby justifying the exercise of personal jurisdiction over it.

The named Defendants target Illinois residents, have offered to sell, have sold, and continue to sell their Counterfeit Products to consumers within the United States, including consumers residing in the State of Illinois, by using Plaintiff's Brand Trademark without authorization to do so. (Mangano Decl. ¶ 11; Sullivan Decl. ¶¶3-4, Ex. 1.) Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive internet-based stores through which Illinois residents can purchase knockoff Counterfeit Products being sold using, without authorization, Plaintiff's Brand Trademark. (*Ibid.*) In fact, Plaintiff has direct evidence of Defendants consummating sales to residents of the State of Illinois and shipping the sold products to the City of Chicago. (Sullivan Decl. ¶¶ 3-4, Ex. 1.) Based on these circumstances, there is absolutely no question that the Court can properly exercise specific personal jurisdiction over the Defendants.

    B.     **Plaintiff is Entitled to Temporary Injunctive Relief.**

Having demonstrated that specific personal jurisdiction can properly be exercised over Defendant, the Court analysis next turns to Plaintiff's entitlement to entry of temporary injunctive relief. Plaintiff asserts that issuance of such relief is warranted as argued below.

To begin with, Plaintiff's Motion requests the Court issue a Temporary Restraining Order (the "TRO") that restrains the following: (1) Defendants' continued misappropriation of the company's Brand Trademark for the manufacture, importation, distribution, offering for sale, and sale of the Counterfeit Products; (2) Defendants' assets to preserve Plaintiff's right to an equitable accounting; (3) authorizes expedited discovery allowing Plaintiff to inspect and copy Defendants' records relating to Defendants' financial accounts; and (4) authorizes service on Defendants by electronic mail and/or electronic publication. (Mangano Decl. ¶ 6.)

The temporary injunctive relief requested by Plaintiff is not unusual in this type of case. In fact, given the covert nature of offshore knockoff and trademark infringing activities and the vital need to establish an economic disincentive for such conduct, courts regularly issue such orders. *See, e.g., ZURU (Singapore) Pte., Ltd et al v. The Individuals, Corporations, Limited Liability Companies, Partnerships and Unincorporated Associations Identified on Schedule A Hereto,* No.: 1-21-CV- 02180, Dkt. No. 14, (N.D. Ill. April 27, 2021) (granting orders requested herein in a similar case involving plaintiff's BUNCH O BALLOONS copyrighted works and trademarks); *Creative Impact Inc. et al v. The 475 Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations Identified on Schedule A Hereto*, No.:1:19-cv-05907, Dkt. No. 17 (N.D. Ill. Sept. 10, 2019) (granting orders requested herein in a similar case involving plaintiff's BUNCH O BALLOONS trademark).

In view of the foregoing, the form of Plaintiff's injunctive relief request is reasonable given the allegations asserted against Defendants. As such, Plaintiff now addresses the merits of its request of issuance of temporary injunctive relief. Plaintiff asserts that it satisfies all requirements for the Court to grant its Motion.

1.   *Plaintiff enjoys a high likelihood of success on the merits of its claims.*

As set forth in Plaintiff's Complaint, the company has asserted claims for relief involving federal trademark infringement, federal unfair competition, federal false designation of origin, and the violation of the Uniform Deceptive Trade Practices Act. [Dkt. No. 1 at 10-15.] The gravamen for each of these claims is the unauthorized use of Plaintiff's Brand Trademark to sell, advertise, display, or offer to sell Defendants' Counterfeit Products.

Accordingly, if Plaintiff establishes a likelihood of success that Defendants are infringing its Brand Trademark, it has a commensurate likelihood of success on its asserted claims for relief. A defendant is liable for trademark infringement and counterfeiting under the Lanham Act if it, "without the consent of the registrant, use[s] in commerce any reproduction, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods ... which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1). A Lanham Act trademark infringement claim has two elements. *See*15 U.S.C. § 1125(a). First, plaintiff must show "that its mark is protected under the Lanham Act." *Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1043 (7th Cir. 2000). Second, plaintiff must show that the challenged mark is likely to cause confusion among consumers. *Id*. In this case, Plaintiff's Brand Trademark is distinctive and is registered with the USPTO. (Mangano Decl. ¶ 4.)  Plaintiff's Brand Trademark registrations is valid, subsisting, in full force and effect. (*Id.*) The registrations for the Brand Trademark constitutes *prima facie* evidence of their validity and of Plaintiff's exclusive right to use them pursuant to 15 U.S.C. §1057(b). Furthermore, Plaintiff has not licensed or authorized Defendants to use its Brand Trademark, and none of the Defendants are authorized retailers of genuine Brand products. (Mangano Decl. ¶ 4;

8

| MOTION FOR TEMPORARY RESTRAINING ORDER | CASE NO. 1:24-cv-12483 |

Turning next to the likelihood of confusion, the Seventh Circuit has held that where "one produces counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, another's product, there is a presumption of a likelihood of confusion." *Microsoft Corp. v. Rechanik*, 249 F. App'x 476, 479 (7th Cir. 2007). Accordingly, the Court can presume a likelihood of confusion from Defendants' unauthorized use of the Brand Trademark.

The result is the same when considered in light of the Seventh Circuit's seven enumerated factors to determine whether there is a likelihood of confusion, which include: (1) similarity between the marks in appearance and suggestion; (2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of complainant's mark; (6) actual confusion; and (7) intent of the defendants to palm off their products as that of another. *AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008). No one factor is dispositive, but the similarity of the marks, actual confusion, and the defendant's intent are "particularly important." *Id*.

Here, Defendants are accused of directly copying and using Plaintiff's Brand Trademark, without authorization, to promote the sale of their Counterfeit Products. Moreover, Defendants are accused of doing so to divert consumers desiring to purchase authentic Brand products from Plaintiff to its Online Marketplace to solicit purchases of Counterfeit Products. These circumstances justify a finding of likelihood of confusion under either the Seventh Circuit's presumption of such conclusion or through application of its seven-factor analysis.

Based on these circumstances, Plaintiff has demonstrated an extremely high likelihood of success on the merits of all asserted claims in this action against Defendants. Accordingly, Plaintiff has unquestionably satisfied the first requirement for issuance of the requested injunctive relief.

2.     ***Plaintiff has no adequate remedy at law and would suffer irreparable harm absent issuance of injunctive relief.***

Plaintiff will unquestionably suffer irreparable harm unless this Court issues the requested injunctive relief. Defendant is unquestionably using Plaintiff's federally protected trademark to promote, display, sell, and offer for sale its own inferior, knockoff products – deceiving unknowing customers in the process and harming the company's established goodwill in the process.

Plaintiff has shown a likelihood of success on the merits of its trademark infringement, unfair competition, false designation of origin, and violation Illinois' Uniform Deceptive Trade Practices Act claims for relief. [Dkt. No. 1 at 10-15.] As a result, Plaintiff is entitled to a rebuttable presumption of irreparable harm. *See* 15 U.S.C. § 1116(a). Moreover, the Seventh Circuit has "clearly and repeatedly held that damage to a trademark holder's goodwill can constitute irreparable injury for which the trademark owner has no adequate legal remedy." *Re/Max N. Cent., Inc. v. Cook*, 272 F.3d 424, 432 (7th Cir. 2001) (citing *Eli Lilly & Co. v. Natural Answers, Inc*., 233 F.3d 456, 469 (7th Cir. 2000)). Irreparable injury "almost inevitably follows" when there is a high probability of confusion because such injury "may not be fully compensable in damages." *Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc*., 560 F.2d 1325, 1332 (7th Cir. 1977) (citation omitted). "The most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods." *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1092 (7th Cir. 1988). As such, monetary damages are likely to be inadequate compensation. *Ideal Indus., Inc. v. Gardner Bender, Inc*., 612 F.2d 1018, 1026 (7th Cir. 1979).

Defendants' unauthorized use of the Brand Trademark has and continues to irreparably harm Plaintiff through diminished goodwill and brand confidence, damage to Plaintiff's reputation, loss of exclusivity, and loss of future sales. (Mangano Decl. ¶¶ 7, 21; ███████ ¶

20-21.) The extent of the harm to Plaintiff's reputation and the goodwill associated therewith and the possible diversion of customers due to loss in Brand confidence are both irreparable and incalculable, thus warranting an immediate halt to Defendants' infringing activities through injunctive relief. *See Promatek Industries, Ltd. v. Equitrac Corp.*, 300 F.3d 808, 813 (7th Cir. 2002)(finding that damage to plaintiff's goodwill was irreparable harm for which plaintiff had no adequate remedy at law). Accordingly, Plaintiff will suffer immediate and irreparable injury, loss, or damage if a Temporary Restraining Order is not issued in accordance with Federal Rule of Civil Procedure 65(b)(1).

### 3. *The balance of the hardships favors issuance of injunctive relief.*

As noted above, if the Court is satisfied that Plaintiff has demonstrated (1) a likelihood of success on the merits, (2) no adequate remedy at law, and (3) the threat of irreparable harm if preliminary relief is not granted, then it must next consider the harm that Defendants will suffer if preliminary relief is granted, balancing such harm against the irreparable harm that Plaintiff will suffer if relief is denied. *Ty, Inc.*, 237 F.3d at 895. As willful infringers, Defendants are entitled to little equitable consideration. "When considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner." *Krause Int'l Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587-88 (D.D.C. 1994). This is because "[o]ne who adopts the mark of another for similar goods acts at his own peril since he has no claim to the profits or advantages thereby derived." *Burger King Corp. v. Majeed*, 805 F. Supp. 994, 1006 (S.D. Fla. 1992) (internal quotation marks omitted). Therefore, the balance of harms "cannot favor a defendant whose injury results from the knowing infringement of the plaintiff's trademark." *Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n*, 929 F. Supp. 473, 478 (D.D.C. 1996).

As Plaintiff has demonstrated, Defendants have been profiting from the sale of Counterfeit Products. Thus, the balance of equities tips decisively in Plaintiff's favor. The public is currently under the false impression that Defendants are operating their e-commerce stores with Plaintiff's approval and endorsement. In this case, the injury to the public is significant, and the injunctive relief that Plaintiff seeks is specifically intended to remedy that injury by dispelling the public confusion created by Defendants' actions. Accordingly, the balance of the hardships tips decidedly in Plaintiff's favor, thereby further justifying issuance of temporary injunctive relief.

**4.** ***Issuance of injunctive relief is in the public interest.***

As noted by one panel of the United States Court of Appeals for the Seventh Circuit, "[a]s to the public interest, because the injunction prevents consumer confusion in the marketplace, the public interest will be served as well." *Promatek Indus., Ltd. v. Equitrac Corp.,* 300 F.3d 808, 813-14 (7th Cir. 2002). Here, Plaintiff 's Motion largely seeks this exact same relief – entry of temporary injunctive relief against the Defendants to cease their sale of the Counterfeit Products using, without authorization, the Brand Trademark. This relief unquestionably seeks to not only protect the value of Plaintiff's Brand and the Brand Trademark, but also serves to protect consumers against being duped into purchasing the Counterfeit Products under the misleading representations that they are securing authentic Brand products from an authorized source. ████ Decl. ¶ 21.) Accordingly, Plaintiff's request for issuance of temporary injunctive relief is in the public interest.

Based on the foregoing, Plaintiff has demonstrated that it stands a high likelihood of success on the merits of its claims for relief. It has also shown that it lacks and adequate remedy at law and would suffer irreparable harm if Defendants' continuing conduct is not immediately restrained pending a hearing in this matter. Additionally, Plaintiff has established that the balance of the hardships favors it if issuance of the requested injunctive relief is denied and that granting

its *Ex Parte* Motion is in the public interest. According, Plaintiff respectfully requests the Court grant the *Ex Parte* Motion and enter a temporary restraining order against Defendants.

### C.     A Minimal Bond Should be Required for Issuance of the TRO.

The posting of security upon issuance of a temporary restraining order or preliminary injunction is vested in the Court's sound discretion. *Rathmann Grp. v. Tanenbaum*, 889 F.2d 787, 789 (8th Cir. 1989); *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 (4th Cir. 1999); Fed. R. Civ. P. 65(c). Because of the strong and unequivocal evidence supporting its claims for trademark infringement, false designation, and unfair competition, Plaintiff respectfully requests that this Court require the company post a bond of no more than Five Thousand Dollars and Zero Cents in United States currency ($5,000.00 USD) as security in this action. Similar bonds have been authorized in actions commenced in this judicial district to guard against the improper issuance of injunctive relief where a high likelihood of success on the merits has been demonstrated. *See, e.g., Zuru (Singapore) Pte., Ltd., et. al. v. The Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations Identified on Schedule A Hereto*, No. 1:21-cv-02151, Document #: 14 (N.D. Ill. May 5, 2021) (Leinenweber, J.) ($5,000.00 bond). Accordingly, Plaintiff asks that the Court require it to post security in the form of cash or a bond in an amount not to exceed Five Thousand Dollars and Zero Cents in United States currency ($5,000.00 USD) in connection with the issuance of the requested temporary injunctive relief.

### D.     Plaintiff is Entitled to Expedited Discovery.

The Supreme Court has held that "federal courts have the power to order at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits." *Vance v. Rumsfeld*, No. 1:06-cv-06964, 2007 WL 4557812, *6 (N.D. Ill. Dec. 21, 2007) (citing *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S. Ct. 2380 (1978)). A district court

has wide latitude in determining whether to grant a party's request for discovery. *Hay v. Indiana State Bd. of Tax Comm'rs*, 312 F.3d 876, 882 (7th Cir. 2002). Furthermore, courts have broad power over discovery and may permit discovery to aid in the identification of unknown defendants. *See* Fed. R. Civ. P. 26(b)(2); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009).

First, Plaintiff requests the Court authorize expedited discovery so that it may subpoena the Platform to obtain, among other things, Defendants' email addresses maintained with the online marketplace. Second, Plaintiff respectfully requests expedited discovery to discover bank and payment system accounts Defendants use for their counterfeit sales operations. The expedited discovery requested in Plaintiff's Proposed TRO is limited to include only what is essential to prevent further irreparable harm. Discovery of the Defendants' email addresses is necessary to effectuate electronic service of process for these proceedings. Next, discovery of Defendants' financial accounts in necessary so that they can be frozen and to ensure that their infringing will be contained. *See, e.g., Deckers Outdoor Corporation v. The Partnerships, et al.*, No. 15-cv-3249 (N.D. Ill. April 4, 2015) (unpublished). Plaintiff's seizure and asset restraint may have little meaningful effect without the requested relief. Accordingly, Plaintiff respectfully requests the Court grant permission to conduct expedited discovery directed to the Defendants and the online Platform at issue in this action.

### E.     Service by Email and/or Electronic Publication is Warranted.

Pursuant to Federal Rule of Civil Procedure 4(f)(3) ("Rule 4(f)(3)" and generally referred to as "Rule 4"), Plaintiff requests this Court authorize service of process by electronically publishing a link to the Complaint, the issued TRO, and other relevant documents on a website to which Defendants will be directed and/or by sending an e-mail to any contact addresses associated with Defendants as provided by the Platform, or third-party platforms and/or Internet

14

service providers that includes a link to said website. Plaintiff submits that providing notice via electronic publication and/or e-mail, along with any notice that Defendants receive from Online Marketplaces and their payment processors, is reasonably calculated under all circumstances, to apprise them of the pendency of the action and afford an opportunity to present their objections.

Electronic service is appropriate and necessary in this case because Defendants: (1) have provided false names and physical address information in their registrations for Defendants' Online Marketplaces in order to conceal their locations and avoid liability for their unlawful conduct; and (2) they rely primarily on electronic communications to communicate with their registrars and customers, demonstrating the reliability of this method of communication by which Defendants may be apprised of the pendency of this action. Authorizing service of process solely via e-mail and/or electronic publication will benefit all parties and the Court by ensuring that Defendants receive prompt notice of this action, thus allowing this action to move forward expeditiously. Absent the ability to serve Defendants in this manner, Plaintiff will almost certainly be left without the ability to prosecute this action in an expeditious and necessary manner or to pursue this matter to a complete final judgment.

Rule 4(f)(3) allows this Court to authorize service of process by any means not prohibited by international agreement as the Court directs. Fed. R. Civ. P. 4(f)(3); *see also Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002). The Ninth Circuit in *Rio Properties* held, "without hesitation," that e-mail service of an online business defendant "was constitutionally acceptable." *Id.* at 1017. The Court reached this conclusion, in part, because the defendant conducted its business over the Internet, used e-mail regularly in its business, and encouraged parties to contact it via e-mail. *Id.*

Similarly, several courts, including courts in this judicial district, have held that alternative forms of service pursuant to Rule 4(f)(3), including e-mail service, are appropriate and may be the only means of effecting service of process "when faced with an international e-business scofflaw." *Id.* at 1018; s*ee e.g.*, *Fairly Odd Treasures, LLC v. Partnerships & Unincorporated Associations Identified on Schedule "A"*, 2020 WL 8093511, at *1 (N.D. Ill. Oct. 28, 2020) ("'Service of process by e-mail has been upheld in circumstances similar to those here.'") (quoting *Strabala v. Zhang*, 318 F.R.D. 81, 115 (N.D. Ill. 2016)); *MacLean-Fogg Co. v. Ningbo Fastlink Equip. Co., Ltd.*, Case No. 1:08-cv-02593, 2008 WL 5100414, *2 (N.D. Ill. Dec. 1, 2008) (holding e-mail and facsimile service appropriate).

Given that all Defendants are alleged to be Chinese nationals and/or Chinese entities selling Counterfeit Products on the same online Platform through the intentional and willful infringement of Plaintiff's Brand Trademark, and are alleged to be doing so through a sophisticated counterfeit network employing common supply chains and/or manufacturing sources, Plaintiff maintains that authorizing electronic service of process via email and/or electronic publication is appropriate and that such means of service comports with the constitutional requirements of Due Process. (Mangano Decl. ¶ 9.) Additionally, Plaintiff is unable to determine the exact physical whereabouts or identities of the registrants of Defendants' Online Marketplaces due to their provision of false and incomplete names and/or street addresses. (*Id.* ¶ 9.) Finally, conclusion is additionally supported given the Defendants' decision to operate their Online Marketplaces anonymously over the internet.

At first blush, the appearance of Chinese Defendants might raise concerns over whether authorization of electronic service of process is consistent with the provisions of the Hague Convention on the Service Abroad of Judicial and Extra Judicial Documents in Civil and

16

Commercial Matters (the "Hague Convention"), of which both China and the United States are signatories. (Mangano Decl. ¶ 10.) The Hague Convention does not preclude service by e-mail, and the declarations to the Hague Convention filed by China do not appear to expressly prohibit e-mail service. *See Hangzhou Chic Intelligent Technology Co. v. The Partnerships and Unincorporated Associations Identified on Schedule A, Defendants.*, 2021 WL 1222783, at *3 (N.D. Ill. Apr. 1, 2021) ("For these reasons, the Court finds it is inappropriate to interpret China's objections to postal service under the Hague Convention as encompassing service by email.").

As such, federal courts, including courts in this judicial district, routinely permit alternative service of process notwithstanding the applicability of the Hague Convention. *See Hangzhou Chic*, 2021 WL 1222783, at *4 ("[T]he Court finds that China has not 'objected' to email service, and the Court's order of email service pursuant to Rule 4(f)(3) was appropriate."); *see also In re LDK Solar Secs. Litig.,* 2008 WL 2415186,*2 (N.D. Cal. Jun. 12, 2008) (authorizing alternative means of service on Chinese defendants without first attempting "potentially fruitless" service through the Hague Convention's Chinese Central Authority); *Nanya Tech. Corp. v. Fujitsu Ltd.*, No. 1:06-cv-00025, 2007 WL 269087, *6 (D. Guam Jan. 26, 2007) (Hague Convention, to which Japan is a signatory, did not prohibit e-mail service upon Japanese defendant); *Popular Enters., LLC v. Webcom Media Group, Inc.*, *supra*, 225 F.R.D. at 562 (recognizing that, while "communication via e-mail and over the Internet is comparatively new, such communication has been zealously embraced within the business community").

Based on the foregoing, Plaintiff has demonstrated more than sufficient grounds to justify the Court authorizing electronic service of process on Defendants. Doing so is wholly consistent with the constitutional Due Process requirements, specifically targeted to provide the Defendants

with the most effective and expeditious notice of these proceedings, and such service means are not prohibited under the Hague Convention. Accordingly, the Court should grant Plaintiff's request to authorize service of process on the Defendants through email and/or electronic publication.

### IV.        **IV. CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests the Court grant its Motion and issue a TRO restraining Defendants, pending a hearing in this matter, from using the company's Brand Trademark to promote, solicit, sell, advertise, and offer to sell their Counterfeit Products, together with such other relief as specified in the proposed Temporary Restraining Order submitted in connection with this filing. Plaintiff additionally asks the Court to set security, in the form of cash and/or a bond, in the amount of Five Thousand Dollars and Zero Cents in United States currency ($5,000.00 USD), for issuance of the TRO.

In addition to the above, Plaintiff requests the Court authorize it to conduct expedited discovery on Defendants and the designated online Platform, which would be primarily directed towards obtaining Defendants' email addresses maintained with the Platform and obtaining financial information concerning sales of the Counterfeit Products, account balances related to same, and associated information.

Finally, Plaintiff asks the Court to authorize electronic service of process upon Defendants in this action via email and/or electronic publication. As argued above, electronic service is the most reliable means to provide the Defendants with prompt, immediate, and effective notice of these proceedings in a form consistent with the constitutional requirements of Due Process.

Dated: December 4, 2024                                 Respectfully SubLmitted,

By: */s/ Shawn A. Mangano*

Shawn A. Mangano (Bar No. 6299408)
Nihat Deniz Bayramoglu (NV Bar No. 14030)
Gokalp Bayramoglu (NV Bar No. 15500)
Joseph Droter (Bar No. 6329630)
**BAYRAMOGLU LAW OFFICES LLC**
1540 West Warm Springs, Suite 100
Henderson, NV 89014
Telephone: (702) 462-5973
Fax: (702) 553-3404
shawnmangano@bayramoglu-legal.com
deniz@bayramoglu-legal.com
gokalp@bayramoglu-legal.com
Joseph@bayramoglu-legal.com
*Attorneys for Plaintiff*