**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| HONG KONG YU'EN E-COMMERCE CO. LIMITED, | ) |
| | ) |
| | ) |
| Plaintiff, | ) Case No: 1:24-cv-12483-EEB- |
| | ) MDW |
| v. | ) |
| | ) |
| THE INDIVIDUALS, CORPORATIONS, | ) Honorable Judge Elaine E. Bucklo |
| LIMITED LIABILITY COMPANIES, | ) Magistrate M. David Weisman |
| PARTNERSHIPS AND UNINCORPORATED | ) |
| ASSOCIATIONS IDENTIFIED IN | ) |
| SCHEDULE "A" HERETO, | ) |
| | ) |
| Defendants. | ) |

**DEFENDANT FUNLINGDO'S MOTION TO DISMISS**
**AND MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

Zheng Gao, Esq.
Reid & Wise LLC
One Penn Plaza, Suite 2015
New York, New York 10119
(212) 858-9968

*Attorneys for Defendant Funlingo*

## TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ……………………………………………………… 1

**ARGUMENT** …………………………………………………………………... 3

**I.  THE COMPLAINT FAILS TO STATE A CLAIM AGAINST FUNLINGO** ……….. 3

    **A.**  The FAC Falls Short Under The Notice Pleading Standard ………………………… 4

    **B.**  The FAC Fails To State An Actionable Trademark Infringement Claim …………… 5

    **C.**  The FAC Fails To State A Joinder Claim ……………………………………… 8

**II. FUNLINGO WAS NOT PROPERLY SERVED** ……………………………… 13

**CONCLUSION** ………………………………………………………………….. 16

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Interactive Products Corp. v. a2z Mobile Office Solutions, Inc.*,
    326 F.3d 698 (6th Cir. 2003) ……………………………………………………... 1, 5, 6

*Instant One Media, Inc. v. EzFaux Décor LLC*,
    2022 WL 4596641 (N.D. Ga. July 26, 2022)……………… …………………………. 1, 6, 7

*Estee Lauder Cosms. Ltd. v. Partnerships & Unincorporated Associations Identified on Schedule A*,
334 F.R.D. 182 (N.D. Ill. 2020) ……………………………………………………. 2, 4, 8, 9, 10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ……………………………………………………………………… 3

*Fortres Grand Corp. v. Warner Bros. Entm't Inc.*,
763 F.3d 696, 700 (7th Cir. 2014) ……………………………………………………... 4

*Paulsen v. Abbott Labs.*,
368 F. Supp. 3d 1152, 1171 (N.D. Ill. 2019) ……………………………………………... 4

*Garner v. Dep't of Just.*,
2020 WL 6047745, No. 20-cv-147-pp (E.D. Wis. Oct. 13, 2020) ………………………….. 4

*Griffin v. Bd. of Regents of the Univ. of Wis. Sys.*,
818 Fed. Appx. 558 (7th Cir. 2020) ……………………………………………………… 4

*Bank of Am., N.A. v. Knight*,
725 F.3d 815, 818 (7th Cir 2013) ………………………………………………………… 4

*H-D U.S.A., LLC v. SunFrog, LLC*,
No. 17-CV-711-JPS, 2017 WL 3261709 (E.D. Wis. July 31, 2017) …………………………….. 6

*Volkswagenwerk Aktiengesellschaft v. Schlunk*,
486 U.S. 694 (1988) ……………………………………………………………………... 13

*Luxottica Grp. S.p.A. v. Partnerships & Unincorporated Associations Identified on Schedule "A"*,
391 F. Supp. 3d 816 (N.D. Ill. 2019) ……………………………………………………… 13

_Prem Sales, LLC v. Guangdong Chigo Heating & Ventilation Equip. Co._,
494 F. Supp. 3d 404, 418 (N.D. Tex. 2020) …………………………………………………... 13

_Peanuts Worldwide LLC v. Partnerships & Unincorporated Associations Identified on Schedule "A"_,
347 F.R.D. 316, 325 (N.D. Ill. 2024) ………………………………………………….. 13, 14

_Mullane v. Cent. Hanover Bank & Tr. Co._,
339 U.S. 306 (1950) …………………………………………………………………………... 14

**Cases**

FRCP 12 …………………………………………………………………………………………..... 3

FRCP 20 ………………………………………………………………………………………... 2, 8

**DEFENDANT FUNLINGDO'S MOTION TO DISMISS**
**AND MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

Defendant Funlingo, through the undersigned counsel, moves to dismiss the First Amended Complaint ("FAC" [Dkt. #27]) (Ex. A), and states as follow:

**PRELIMINARY STATEMENT**

Funlingo is a Chinese-based online retailer selling its own brand "Funlingo" garments. Its business, however, has been severely damaged by the abusive use of this proceeding by its competitor, the Plaintiff.

Plaintiff's claims against Funlingo are fatally flawed. They rest on conclusory and legally meritless allegations of trademark infringement, improper joinder of unrelated defendants, misrepresentations to the Court, and procedural ambush tactics that undermine due process.

Plaintiff alleges that it owns the "Modlily" trademark, and accused Funlingo of trademark infringement because 129 URLs containing the word "Modlily" in the URLs' post-domain paths would direct consumers to an Amazon webpage selling Funlingo's products, namely, "Funlingo 2024 Women's Long Sleeve Tops Dressy Pleated Square Neck Tunic Blouses Casual Loose Shirts" (Ex. B). However, courts have repeatedly held that "presence of another's trademark in a post-domain path of a URL [does not] violate trademark law." *Interactive Products Corp. v. a2z Mobile Office Solutions, Inc.*, 326 F.3d 687, 698 (6th Cir. 2003); *Instant One Media, Inc. v. EzFaux Decor, LLC*, No. 1:19-CV-00540-WMR, 2022 WL 4596641, at *2 (N.D. Ga. July 26, 2022) ("Courts in other circuits have routinely held that information in a post-domain URL resulting from an online search does not constitute a trademark infringement").

Despite this clear law foreclosing its claims, Plaintiff filed one complaint against

twenty defendants which does not mention Funlingo other than identifying it in a "sealed" Schedule A (Dkt. #1 and #1-2) (Ex. C), moved *ex parte* for a temporary restraining order to freeze Funlingo's Amazon account based on the baseless accusation of trademark infringement (Dkt. #7), never attempted to properly serve Funlingo under the Hague Convention, emailed to Funlingo a wrong Schedule A that does not list Funlingo as a defendant (Dkt #27-2) (Ex. D), and misrepresented in the proof of service that this email constitutes proper service of process (Dkt. #29 and #30) (Ex. E).

Plaintiff's joinder of Funlingo in this action is improper under Rule 20(a)(2) of the Federal Rules of Civil Procedure ("FRCP"). Plaintiff's joinder claim rests solely on Plaintiff's utilizing of the descriptive words – "Tunic Blouses Casual" (Dkt. #8-2) (Ex. H). Plaintiff argues that Funlingo and the other 19 co-defendants "utiliz[e] the same keywords in the body of their storefronts" and therefore are related (Dkt. #7-1 [Mangano Decl.] at § 17) (Ex. F). However, precedents in this judicial district routinely hold that such generic descriptive terms are insufficient to draw an inference of a connection between the defendants. *Estee Lauder Cosms. Ltd. v. Partnerships & Unincorporated Associations Identified on Schedule A*, 334 F.R.D. 182, 188 (N.D. Ill. 2020). In addition, contrary to Plaintiff's allegation that all 20 defendants utilize the same keywords, Plaintiff's own submission (Dkt. #8-2) (Ex. H) clearly shows that no other defendant uses the exact keywords in the same sequence – "Tunic Blouses Casual" – as Funlingo.

Plaintiff also misrepresented to this Court that this was "Plaintiff's first action commenced in this judicial district to enforce the [Modlily] Trademark" (FAC [Dkt. #27] at ¶ 7) (Ex. A). Plaintiff concealed that it previously filed the same Schedule A Complaint in this district, faced Judge Daniel's *sua sponte* threat of Rule 11 sanctions for misjoinder,

dismissed all but one defendant in the prior action, and then brazenly refiled the same Schedule A Complaint in less than a month.

Worse, Plaintiff misrepresented in its proof of service that it had served the First Amended Complaint on all defendants (Dkt. #29 and #30) (Ex. E). In fact, Plaintiff served a wrong pleading that names a different set of entities as defendants. Funlingo's name does not appear in the Schedule A that Plaintiff emailed to it (Dkt #27-2) (Ex. D).

As a result of Plaintiff's filing this lawsuit against competitors and its misrepresentations to this Court, Amazon has frozen all funds in Funlingo's seller's account, which in effect is shutting down Funlingo's business. Funlingo was not only improperly served, but also was denied the due process to appear, respond, or be heard before its business was ruined by the asset freeze orders. Plaintiff's conduct is not just improper—it's an abuse of the judicial process.

For these reasons, elaborated below, Plaintiff's Complaint against Funlingo should be dismissed.

## ARGUMENT

## I. THE COMPLAINT FAILS TO STATE A CLAIM AGAINST FUNLINGO

Where the complaint fails to state a claim upon which relief can be granted, a defendant may make a motion to dismiss under FRCP 12(b)(6).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). Threadbare recitals of the

3

elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*. In a trademark suit, "[a]llegations of consumer confusion … cannot save a claim if they are implausible." *Fortres Grand Corp. v. Warner Bros. Entm't Inc.*, 763 F.3d 696, 700 (7th Cir. 2014). "[C]ourts are not required to accept conclusory or speculative statements that do not qualify as assertions of *fact*." *Estee Lauder*, 334 F.R.D. at 185.

### A. The FAC Falls Short Under The Notice Pleading Standard.

Where multiple defendants are sued, the allegations in the complaint must allow "each individual defendant [to know] what it did that allegedly harmed the plaintiff", *Paulsen v. Abbott Labs.*, 368 F. Supp. 3d 1152, 1171 (N.D. Ill. 2019). "Federal notice pleading requires more than merely naming a defendant in a caption or a conclusory statement that a defendant harmed a plaintiff; 'each defendant is entitled to know what he or she did that is asserted to be wrongful.'" *Garner v. Dep't of Just.*, 2020 WL 6047745, No. 20-cv-147-pp, at *16-17 (E.D. Wis. Oct. 13, 2020), citing *Griffin v. Bd. of Regents of the Univ. of Wis. Sys.*, 818 Fed. Appx. 558 (7th Cir. 2020). "A complaint based on a theory of collective responsibility must be dismissed." *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir 2013).

Here, the FAC asserts trademark infringement claims against all defendants. The FAC, however, does not allege any instance of Funlingo using the Modlily mark. It never mentions Funlingo other than identifying it in the Schedule A.[1]  Plaintiff improperly treats all of the unrelated defendants as one, and relies on general conclusory statements about defendants "upon information and belief." Simply speaking, the complaint does not tell

---

[1]  Plaintiff initially filed a wrong Schedule A to the FAC (Dkt #27-2) (Ex. D) that did not even contain Funlingo's name.

Funlingo what it is alleged to have done.

Therefore, the FAC fails to state a valid claim and should be dismissed.

**B. The FAC Fails To State An Actionable Trademark Infringement Claim.**

Plaintiff is unable to state facts to establish a plausible claim against Funlingo because it does not have an actionable infringement claim.

While the FAC is silent as to how Funlingo allegedly infringed Plaintiff's trademark, Plaintiff filed under seal the "copies of each link that leads to Defendants' unauthorized use of the Brand Trademark in the body of its storefront" (Dkt. #8-1) (Ex. G) as Exhibit 1 to the Declaration of Shawn A. Mangano ("Mangano Declaration") in support of its motion for TRO.

According to this document (Dkt. #8-1) (Ex. G), Plaintiff does not appear to claim that "Modlily" has ever appeared in Funlingo's product descriptions or anywhere else in Funlingo's Amazon store. Rather, its infringement claims against Funlingo are solely based on 129 URLs listed in this document; according to that list, each URL contains "Modlily" in the post-domain paths and directs consumers to an Amazon webpage selling Funlingo's products "Funlingo 2024 Women's Long Sleeve Tops Dressy Pleated Square Neck Tunic Blouses Casual Loose Shirts" (Dkt. #8-1 at pages 12-14) (Ex. B).[2]

However, "the presence of another's trademark in a post-domain path of a URL would [not] violate trademark law." *Interactive Products Corp. v. a2z Mobile Office*

---

[2] Plaintiff filed Dkt. #8-1 and #8-2 under seal, and refused to serve this document on Funlingo despite repeated request, necessitating Funlingo to make a motion for expedited discovery and a motion to unseal. Funlingo did not have access to these documents until after this Court granted Funlingo's motion to unseal (Dkt. #53). Before the unsealing order, Plaintiff had only provided a list of 129 URLs (Ex. B), an excerpt from Dkt. #8-1.

*Solutions, Inc.*, 326 F.3d 698 (6th Cir. 2003). Courts facing similar claims have routinely held that "words or phrases appearing in a post-domain URLs do not constitute trademark infringement." *Instant One Media, Inc. v. EzFaux Decor, LLC*, No. 1:19-CV-00540-WMR, 2022 WL 4596641, at *2 (N.D. Ga. July 26, 2022).

In *Interactive Products Corp. v. a2z Mobile Office Solutions, Inc.*, 326 F.3d 687 (6th Cir. 2003) – the first and believed to be the only Circuit-level authority on this issue – the Sixth Circuit held that, unlike a website domain name, which consumers typically view as a signifier of source, a post-domain path in a URL "merely shows how the website's data is organized within the host computer's files." *Id*, at 696-97. As such, post-domain paths generally do not signify source for consumers and, consequently, do not cause consumer confusion. *Id*. "The Seventh Circuit has not opined on this topic, and there appear to be no courts that have disagreed with *Interactive Products*." *H-D U.S.A., LLC v. SunFrog, LLC*, No. 17-CV-711-JPS, 2017 WL 3261709, at *5 (E.D. Wis. July 31, 2017).

As the Sixth Circuit explained in *Interactive Products*, "[e]ach website has a corresponding domain name, which is an identifier somewhat analogous to a telephone number or street address. … Because of the importance of a domain name in identifying the source of a website, many courts have held that the use of another's trademark within the domain name of a website can constitute a trademark violation." *Interactive Products*, 326 F.3d at 691.

"Each web page within a website has a corresponding uniform resource locator ("URL") (*e.g.,* a2zsolutions.com/ desks/floor/laptraveler/dkfl-lt.htm), which consists of a domain name and a post-domain path. A post-domain path (*e.g.,*

6

/desks/floor/laptraveler/dkfl-lt.htm) merely shows how a website's data is organized within the host computer's files." *Id*. While the domain name signifies its source of origin, "the post-domain path serves a different function and does not signify source of origin." *Id*, at 697. "**Because post-domain paths do not typically signify source, it is unlikely that the presence of another's trademark in a post-domain path of a URL would ever violate trademark law.**" *Id*, at 698 (bold added).

As for the 129 URLs presented by Plaintiff in this case, "www.amazon.com/" is the domain name, and the text that comes after the slash is the post-domain path. The appearance of "Modlily" in these post-domain paths is not actionable infringement as a matter of law.

Plaintiff's allegations in this case are almost identical to the facts in *Instant One Media, Inc. v. EzFaux Decor, LLC*, No. 1:19-CV-00540-WMR, 2022 WL 4596641 (N.D. Ga. July 26, 2022).

In *Instant One*, the plaintiff argued that the defendant infringed its trademark "Instant Granite" by selling products under the URL "https://amazon.com/Instant-Counter-Granite-Adhesive-Venetian/dp/B00O05UCKY/." The *Instant One* Court rejected this argument, holding that "information in a post-domain URL resulting from an online search does not constitute trademark infringement." *Id*, at *2. As held by the *Instant One* Court, "[a]lthough Plaintiff has shown that its trademark words or phrases can appear in post-domain URLs associated with the ASINs when conducting an online search for products on Amazon.com, the information reflected in the post-domain URLs merely shows how Amazon's data is organized and/or the search terms that are provided by the person initiating the search. Plaintiff has failed to show how Defendant could be held

responsible for the information contained in Amazon.com's post-domain URLs." *Id*, at

*3.

Like *Instant One*, Plaintiff here similarly claims that Funlingo infringed its

trademark because "Modlily" allegedly appears in the post-domain paths of the 129

URLs. However, just as the *Instant One* Court and *Interactive Products* Court have held,

the appearance of "Modlily" in the post-domain paths is not actionable infringement at

all.

### C. The FAC Fails To State A Joinder Claim.

Under FRCP 20(a)(2), multiple defendants may be joined in a single action if two

requirements are satisfied: (1) the claims against them must be asserted "with respect to or

arising out of the same transaction, occurrence, or series of transactions or occurrences,"

and (2) there must be a "question of law or fact common to all defendants." *Estee Lauder*

*Cosms. Ltd. v. Partnerships & Unincorporated Associations Identified on Schedule A*, 334

F.R.D. 182, 185 (N.D. Ill. 2020).

"Courts generally find that claims against different defendants arose out of the same

transaction or occurrence only if there is a logical relationship between the separate causes

of action. Claims have a logical relationship when there is a substantial evidentiary overlap

in the facts giving rise to the cause of action against each defendant. In other words, to be

part of the same transaction requires shared, overlapping facts that give rise to each cause

of action, and not just distinct, albeit coincidentally identical, facts." *Id*.

Here, the FAC joined twenty defendants in one action based on the allegation that,

"[u]pon information and belief," all defendants infringed Plaintiff's trademark "jointly and

severally." (FAC [Dkt. #27] at ¶ 29) (Ex. A). However, "mere speculation" or "conclusory

allegations" like this "do not qualify as assertions of *fact*" and "cannot support joinder." *Estee Lauder*, 334 F.R.D. at 185.

In support its motion for TRO, Plaintiff filed under seal what it characterized as "copies of Defendants' utilizing the same keywords in the body of their storefronts" (Dkt. #8-2) (Ex. H) as Exhibit 2 to the Mangano Declaration in support of its motion for TRO.

Plaintiff argues that Dkt. #8-2 (Ex. H) shows that Funlingo and the other defendants are "utilizing the **same** keywords in the body of their storefronts" (Dkt. #7-1 [Mangano Decl.] at § 17) (Ex. F) (emphasis added), which purportedly links the defendants.

However, this assertion is not true.

Rather, as shown by Dkt. #8-2 (Ex. H), the product images, descriptions, and even prices for these 20 defendants differ significantly.

According to Dkt. #8-2 (Ex. H), the alleged keywords used by Funlingo are "Tunic Blouses Casual." These descriptive terms, however, "are so generic that no inference of a connection between the defendants can be drawn." *Estee Lauder*, 334 F.R.D. at 188.

Furthermore, contrary to Plaintiff's allegation, Dkt. #8-2 (Ex. H) clearly shows that no other defendants use the same key terms with Funlingo.

The key terms used by the first three defendants listed in Dkt. #8-2 (Ex. H) – "Tummy Control" – are not used by Funlingo. The key terms by the fourth defendant "Newchoice," although containing "Tunic Blouses," do not have the third word "Casual." The fifth and seventh defendants, "Ceboyel" and "Neiak112z.1," although they use all three words – "Tunic," "Blouses," and "Casual" – use these words in different sequences.

The terms used by the eighth and ninth defendants, namely "Casual Tunic Top," are also not the same as the terms used by Funlingo. Additionally, Funlingo does not use the terms "4th of July" or "Flowy Hem," which appear in the listings of the last four defendants.

Indeed, the images, descriptions, and unit prices of Funlingo's listings are entirely distinct from those of the other defendants. One cannot assume that sellers using generic descriptive words to fairly describe their products are likely connected. As the court noted in *Estee Lauder*, "[i]t is true that, in other trademark-infringement cases, this Court has relied on unique images, unique word and sentence constructions, or the same misspellings or grammar mistakes to infer that a subset of online retailers using those same images or descriptions are connected to one another. But that is not nearly true of *all* the Defendants in this case." *Estee Lauder*, 334 F.R.D. at 188.

Therefore, Funlingo is misjoined in this case.

Moreover, Plaintiff's attempt to misjoin Funlingo with other unrelated defendants is not a mere oversight or misunderstanding of the joinder rules—it is a calculated and knowing tactic employed by Plaintiff to target and impair its competitors.

In fact, Plaintiff is fully aware that joining 20 defendants in one case is improper, as Plaintiff filed the same complaint before and faced a threat of Rule 11 sanctions for making unfounded joinder claims.

One month before this action, on October 25, 2024, Plaintiff filed an almost identical complaint in this judicial district, under case number 1:24-cv-11029 ("Former Action") (Ex. I, Former Action Civil Docket; Ex. J, Former Action Complaint). In the Former Action, Plaintiff also sued 20 defendants, and the name list of the 20 defendants was filed under seal. On October 29, 2024, Judge Daniel issued a *sua sponte* order

requiring Plaintiff to show cause why Rule 11 sanctions should not be imposed for making unfounded joinder claims (see Ex. K, Rule 11 OSC in Former Action). In that order, Judge Daniel stated:

> The plaintiff has filed a complaint alleging trademark infringement, counterfeiting, unfair competition, false designation of origin, and violations of the Illinois Uniform Deceptive Trade Practices Act against 20 defendants. (R. 1 and R. 2.) This case follows a pattern common to "Schedule A" cases where plaintiffs allege that defendants employ similar methods and "work in active concert" to infringe plaintiffs' intellectual property. But experience has shown that not all defendants named in a Schedule A case work together. More importantly, experience has shown that joinder under Fed. R. Civ. P. 20 is rarely appropriate in Schedule A cases. Accordingly, the Court raises the propriety of joinder and requires the plaintiff to file a supplemental memorandum addressing the propriety of joinder on or before November 8, 2024. Alternatively, by the same date, the plaintiff may file an amended complaint naming one or more defendants; however, if the plaintiff names multiple defendants, the plaintiff must show that joinder of those defendants is proper. Having reviewed the complaint, the Courtis also concerned about certain allegations directed towards joinder. For instance, the complaint alleges that, "Upon information and belief, [d]efendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Counterfeit Products in the same transaction, occurrence, or series of transactions or occurrences." (R. 1 Para. 29.) The complaint also alleges that, "[d]efendants, without any authorization of license from the Plaintiff, have jointly and severally, knowingly and willfully used and continue to use the Brand Trademark." (Id.) These are conclusory statements that do nothing to establish the propriety of joinder. Moreover, experience has shown that, while some individual defendants may operate several online stores, and while some individual defendants may coordinate with other defendants before or after the filing of the infringement action, rarely, if ever, have all defendants named in a Schedule A case worked together, let alone "jointly and severally." Fed. R. Civ. P. 11(b)(3) requires that, "factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Pursuant to Fed. R. Civ. P. 11(c)((3), the Court requires counsel for the plaintiff to show cause why the allegations that "defendants are working in active concert" or that defendants have done anything "jointly and severally" do not violate Rule 11(b)(3). The Court will

consider the issues raised in this order first, and will hear argument on the issues raised in this order on November 12, 2024, at 9:30 a.m.

(see Ex. K, Rule 11 OSC in Former Action)

Specifically, Judge Daniel gave Plaintiff two options: Plaintiff should either provide a good faith basis for alleging that the 20 defendants were acting jointly and severally, or alternatively drop the 20 defendants and only name one defendant. Plaintiff chose the latter. It dropped all 20 Schedule A defendants from the Former Action except one defendant. In light of this, Judge Daniel discharged his rule to show cause during the hearing on November 12, 2024. But he admonished Plaintiff that it was required to have sufficient evidence "before alleging that defendants are acting jointly and severally," and warned Plaintiff "to be mindful of what goes into [the] complaints" (Ex. L, Transcript of Hearing held on November 12, 2024 before Judge Daniel, at 5:2-13).

Despite Judge Daniel's clear warning, instead of filing a substantiated complaint with a sound factual and legal basis, on December 4, 2024, Plaintiff proceeded to commence this action and evidently re-filed the same complaint against the same 20 Schedule A defendants as the Former Action.

Significantly, to evade Judge Daniel's rule to show cause concerning the improper joinder of 20 defendants, Plaintiff misrepresented in the instant action that this was Plaintiff's "first action" to enforce its trademark. (Dkt. #1 (Ex. C) at ¶ 7; Dkt. #27 (Ex. A) at ¶ 7). However, as the Former Action shows, this action is indisputably NOT Plaintiff's "first action" to enforce its trademark.

Funlingo has asked Plaintiff if the defendants in this case are the same set of Schedule A defendants dropped by Plaintiff in the Former Action, but Plaintiff refused to answer (see Dkt. 47-1 (Ex. M) at ¶¶ 22-28). Plaintiff is even refusing to answer whether

Funlingo was listed in the Schedule A in the Former Action.

Plaintiff's refusal to answer such a simple question raises a strong inference that, after Judge Daniel discharged the rule to show cause for Rule 11 sanctions, Plaintiff refiled the same complaint against the same set of defendants it dropped from the Former Action, hoping that the re-filed case would be assigned to a different judge. If this is the case, severe sanctions would be warranted.

## II. FUNLINGO WAS NOT PROPERLY SERVED

This Court should also dismiss Funlingo under FRCP 12(b)(4) and (5) because it was not properly served. Where there has been insufficient service of process, the court does not have personal jurisdiction over Funlingo. *Rabiolo v. Weinstein*, 357 F.2d 167, 168 (7th Cir. 1966), *cert. denied*, 391 U.S. 923 (1968).

In this case, Plaintiff alleges that it served process on Funlingo, a defendant in China, by email. However, service of a foreign defendant is governed by the Hague Convention, *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699, 705 (1988), and the Hague Convention "preclud(es) service by email" on a Chinese defendant. *Luxottica Grp. S.p.A. v. Partnerships & Unincorporated Associations Identified on Schedule "A"*, 391 F. Supp. 3d 816, 827 (N.D. Ill. 2019). Furthermore, "China requires documents served under the [Hague] Convention to either be written in Chinese or translated into Chinese." *Prem Sales, LLC v. Guangdong Chigo Heating & Ventilation Equip. Co.*, 494 F. Supp. 3d 404, 418 (N.D. Tex. 2020).

We understand that other courts in this judicial district have allowed service by email on Chinese defendants in certain circumstances. *See e.g., Peanuts Worldwide LLC v. Partnerships & Unincorporated Associations Identified on Schedule "A"*, 347 F.R.D. 316,

325 (N.D. Ill. 2024). However, the case at bar highlights why such leniency is unwarranted where, as here, Plaintiff is not using flexible service rules in good faith—it is weaponizing them to ambush competitors with *ex parte* TROs and secretive proceedings.

"An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314, (1950).

In this case, Plaintiff represented to the Court in its proof of service that it served the Summons, the original Complaint, and the FAC by email to Funlingo (see Return of Service [Dkt. #29] and Certificate of Service Re FAC [Dkt. #30]) (Ex. E).

Neither the Summons nor the two versions of the complaint contain Funlingo's name, but they reference a Schedule A to the Complaint. The Schedule A to the original Complaint emailed to Funlingo (Dkt. #1-2) (Ex. C), however, does not list any defendants' names since it is no more than a cover page stating that "Exhibit 2 Filed Under Seal." Plaintiff never emailed any documents filed under seal to Funlingo. The Schedule A to the First Amended Complaint (Dkt. #27-2) (Ex. D) listed 17 Walmart sellers, none of which is Funlingo.

Even taking a step back and assuming that Plaintiff's filing of the incorrect Schedule A to the FAC was merely a clerical error rather than an intentional act, the situation would have unfolded quite differently had Plaintiff adhered to the requirements of the Hague Convention. Had Plaintiff translated both the FAC and the Schedule A into Chinese, as mandated by the Convention, it is highly likely that the translation process

14

would have revealed the error—specifically, that Funlingo's name was not included in the erroneous Schedule A. This oversight could have been identified and corrected before it resulted in violations of due process and deprived Funlingo of its fundamental right to a fair opportunity to participate in the proceedings.

Without serving a correct pleading naming Funlingo as a defendant, the purported email service was a nullity.

It was not until February 13, 2025, when Funlingo appeared by counsel and raised this issue with Plaintiff, asking why Funlingo's name could not be found in any served pleadings (see Dkt. #47-1 (Ex. L) at ¶ 14), that Plaintiff simply stated it had filed an "erroneous" Schedule A to the First Amended Complaint, and then filed the "corrected" list (Ex. N at page "10/13"). By that time, however, this Court had already granted Plaintiff's unopposed motion for preliminary injunction, and Funlingo's Amazon business had been interrupted for over a month without service of the correct pleading.

This sequence of events raises serious procedural and fairness concerns. Funlingo could not be expected to defend itself or oppose Plaintiff's preliminary injunction motion when the pleading it received does not name it as a defendant, while the correct Schedule A purportedly containing Funlingo's name was filed under seal and never served by Plaintiff. Plaintiff's serving an incorrect pleading deprived Funlingo of meaningful participation in the early stages of the case, including any opportunity to contest the preliminary injunction motion.

The flexibility afforded by courts for alternative service—particularly on foreign or unknown defendants—exists to ensure plaintiffs can pursue legitimate claims even when defendants are difficult to locate or evade service. However, that flexibility cannot be used

as a weapon to blindside adversaries with *ex parte* proceedings, as occurred here.

By omitting Funlingo's name from any public-facing documents while simultaneously serving documents that failed to connect Funlingo to the case, Plaintiff created a Kafkaesque scenario where Funlingo was ostensibly "served" but had no ability to understand or respond to the case. This is especially egregious when combined with the drastic provisional remedy of asset restraints, which unfairly restrict the defendant's lawful business without the benefit of a hearing.

The Court should not permit Plaintiff to benefit from such tactics. It should dismiss Funlingo for insufficient process and insufficient service of process.

<u>**CONCLUSION**</u>

For the foregoing reasons, defendant Funlingo respectfully requests that the Court dismiss the FAC in its entirety, order Amazon to release the funds in Funlingo's account and lift any restraints on Funlingo's account, order Plaintiff's counsel to notify Amazon to lift any restraints on Funlingo's Amazon account, and for such other and further relief as the Court deems just and proper.

Dated: April 14, 2025

Respectfully submitted,

/s/ Zheng Gao
Zheng Gao, Esq.
Reid & Wise LLC
One Penn Plaza, Suite 2015
New York, New York 10119
C: (212) 858-9968
zgao@reidwise.com
*Attorneys for Defendant Funlingo*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 14, 2025, a copy of the foregoing was filed via the Court's

ECF filing system, thereby serving it upon all counsel of record.

/s/ Zheng Gao      
Zheng Gao, Esq.
